[No. 50094–1. En Banc. December 13, 1984.]

*In the Matter of the Personal Restraint of* DOUGLAS BOONE, *Petitioner.*

*Monte E. Hester* and *Jay C. Immelt*, for petitioner.

*William H. Griffies, Prosecuting Attorney*, and *Chris Quinn–Brintnall, Chief Criminal Deputy*, for respondent.

DORE, J.—In this personal restraint petition, Douglas Boone challenges the revocation of his probation of second degree assault. The principal issue is whether Boone was denied due process of law in connection with the revocation proceeding because his probation officer had submitted a · secret report to the trial court about which Boone did not learn until later. We find that petitioner Boone has made a prima facie showing both that error occurred and that the error worked to his actual prejudice and, therefore, grant his personal restraint petition. We transfer the petition to the superior court for a hearing in accordance with this opinion.

## PROCEEDINGS BELOW

Boone pleaded guilty in 1980 to second degree assault. A sentence of 10 years was imposed but suspended on condition of Boone's spending 270 days in jail and being on probation. Among the conditions of probation was that Boone would abstain from drinking alcohol. On March 19, 1981, Boone's probation officer submitted a report charging Boone with violating his probation by driving while intoxicated and possessing a controlled substance. In a supplemental report dated May 8, 1981, the probation officer stated that Boone had been convicted of driving while intoxicated, but that laboratory tests had shown that Boone had not possessed a controlled substance. The supplemental report also alleged that Boone had further violated the conditions of his probation by assaulting and injuring an individual on the same night he was stopped for driving while intoxicated. Both the original report and the supplemental report recommended in strong terms that Boone's probation be revoked because of his drinking, lack of coop-

eration with probation supervision, and violent behavior.

A preliminary hearing was held on May 13, 1981. Boone was represented by counsel and stipulated to probable cause to hold him pending a final hearing. This final revocation hearing took place on May 28. On that day, Boone's probation officer submitted to the court a "special" report that now forms the basis for this petition. This report said that on May 20 Boone's probation officer had received a call from Boone's girl friend, Theresa Iverson. The probation officer said that Iverson was "nearly frantic" because Boone had told her he was going to be released from the Pierce County Jail. According to the parole officer, Iverson said that she feared for her safety should Boone be released. The parole officer said that for this reason, this special report was being given to the court only. Attached to the "special" report was a statement by Iverson. She said, among other things, that she had tried leaving Boone but that he would hit her and force her not to go anywhere unless he was there to keep an eye on her. The last time he hit her, he broke two of her teeth. He spent all of her money so she could not pay her bills. He drank heavily every day. She was waiting until he went to jail so she could leave and hide herself. She was afraid of Boone and afraid that when he got out of jail he would hurt her because she no longer wanted to have anything to do with him. Iverson said that if the court had questions, it could reach her through the parole officer or talk to her in person. Finally, Iverson said that she did not want to say anything in front of Boone or have him read her statement because he would blame her for going to jail and try to kill her when he got out.

Although this "special" report with the attached statement bears a stamp indicating it was "filed in open court" on May 28, Boone says that he was not shown it or told of its existence. The verbatim report of the revocation hearing also contains no reference whatsoever to this report.

At the start of the revocation hearing, the court was informed that Boone's counsel had withdrawn 2 days ear-

lier. The court asked Boone what he was going to do about an attorney and suggested that the hearing be set over a week so Boone could notify the Department of Assigned Counsel. Boone responded that he "wouldn't feel slighted a bit" if the hearing proceeded without counsel. Boone reasoned that if he did obtain an attorney he would probably only be able to talk to the attorney once during the next week. The court then ascertained that Boone could read and write and had completed almost 2 years of college. After Boone assured the court that he was intelligently waiving the right to counsel, the court decided to proceed.

Boone's parole officer took the stand and elaborated on his two violation reports. The State then put the alleged victim of the assault on the stand to recount his version of that incident.

Boone then gave his own version of the violation incidents. He essentially admitted the driving–while–intoxicated charge but said that the alleged assault victim had instigated that altercation. Boone also explained some of the other problems described in the two reports which he knew about, gave his own version of how he had been doing on probation, and argued for a treatment–oriented alternative to revocation. The State then argued for revocation based on the driving–while–intoxicated and assault incidents and Boone's "history of assaults". The court then looked at Boone's file showing a history of assaults going back to 1972 and revoked probation. As noted above, nothing was ever said about the secret report. Nor did the trial court enter any formal findings regarding the evidence relied on or the reasons for revoking probation.

At some point, Boone learned about the secret report. On August 8, 1983, represented by counsel, he filed the present personal restraint petition. Boone argued in his petition that his due process rights had been violated by Miller's submission of the secret report to the court. Boone also claimed that he had not validly waived his right to counsel at the revocation hearing. On November 8, 1983, Acting Chief Judge Worswick entered an order dismissing Boone's

personal restraint petition. The Acting Chief Judge first concluded that the trial court's decision to proceed without the presence of an attorney was not erroneous. The Acting Chief Judge also held that Boone had not shown how he was actually prejudiced by the secret report, even assuming the report had been considered by the trial court in revoking probation. We granted discretionary review.

## WAIVER OF COUNSEL

Petitioner Boone initially contends that he did not validly waive his constitutional right to representation by counsel at the probation revocation hearing.

The first question is whether petitioner had such a right to counsel. CrR 7.5(b) unequivocally provides that a defendant at a probation revocation hearing has the right to be represented by counsel. The United States Supreme Court has held, however, that the body conducting a probation revocation hearing should decide in each individual case whether due process requires that an indigent probationer be represented by counsel. *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). In *Scarpelli,* the Court held that, although the State is not constitutionally obliged to provide counsel in all cases, it should do so where the indigent probationer may have difficulty in presenting his version of disputed facts without the examination of witnesses or the presentation of complicated documentary evidence:

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the

probationer appears to be capable of speaking effectively for himself.

*Scarpelli,* at 790–91.

We need not determine whether Boone had a constitutional right to counsel, for, even if he had, we hold that he validly waived it before the probation revocation hearing commenced.

■ A waiver of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Edwards v. Arizona,* 451 U.S. 477, 482, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). In this case, the trial court offered Boone an opportunity to retain counsel. He refused it, reasoning that "the things that have to be said are things that my PO will recommend to you and things that I know of the incident". The trial court then ascertained that Boone could read and write, and had 14 years of education including nearly 2 years of college education. Finally, the trial court reminded Boone that he had a constitutional right to counsel, and asked if he was waiving it. Boone answered in the affirmative. On the record, Boone made a knowing and intelligent relinquishment of a known right to counsel.

### Minimum Due Process

■ ■ A parole or probation revocation hearing is not a criminal proceeding within the meaning of the Bill of Rights and the Fourteenth Amendment, or within the meaning of article 1, section 22 of the Washington State Constitution. *State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 416 P.2d 670 (1966). Accordingly, a parolee's or probationer's due process rights are not the same as those of a person accused of crime. *Gagnon v. Scarpelli, supra* (probation); *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972) (parole). In *Morrissey,* the Supreme Court articulated the minimum due process

requirements of a parole revocation hearing. In *Scarpelli,* the Court made the same requirements applicable to probation revocation hearings. These requirements are:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."

*Scarpelli,* at 786 (quoting *Morrissey,* at 489).

A recent Court of Appeals opinion illustrates the proper application of these requirements. *State v. Lawrence,* 28 Wn. App. 435, 624 P.2d 201 (1981). In *Lawrence,* the defendant was served with a notice of a revocation hearing, which alleged two probation violations: absconding from probation supervision from October 1978 until his arrest, and assaulting his wife after being placed on probation. At the hearing, defense counsel admitted that the defendant had failed to report to his probation officer, but denied the allegation that the defendant had assaulted his wife. When asked for his comment, the defendant told the court that the alleged assault in November 1978 related to a minor domestic dispute between himself and his wife that had prompted his sister to call the police. No further evidence was presented.

At the conclusion of the hearing in *Lawrence,* the trial court stated that it would find that the defendant had violated his probation in failing to report. The court also said that it would not make a finding on the assault. The court went on to say, however, that "'possibly what one might be able to assume was some connection between the assault, the wife eight months pregnant and the premature death of the [couple's] baby.'" *State v. Lawrence, supra* at 437. The

court then refused the defendant's offer to have his wife testify and answer any questions about the alleged assault. When defense counsel questioned the court about the basis of its decision to revoke probation, the court said that it was revoking probation for the defendant's failure to report, and was also "'taking into consideration, in the disposition of that violation, everything I know and did not know at the time I released him from jail and what has been going on since.'" *Lawrence,* at 437.

On appeal, the Court of Appeals reversed and remanded for a new probation revocation hearing. The court first noted that the *Scarpelli* requirements include an opportunity to be heard in person and to present witnesses and documentary evidence. The court held that by refusing to allow the defendant's wife to testify, the trial court denied the defendant his minimal due process rights.

The court also concluded that, in addition to the defendant's admitted violations, the trial court had relied on other unarticulated facts in reaching its decision to revoke probation. The court said that due process requires that findings of a probation violation be based *only on verified facts.* To assure such a basis, the trial court must provide a statement of the evidence relied on and the reasons for its decision sufficient to permit effective appellate review. *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). Because the trial court's opinion failed to fully articulate the factual basis for its decision, the decision was not amenable to judicial review as required by due process.

In the present case, submission of the secret report violated the *Scarpelli* standards. First, petitioner was not given notice of all of the claimed violations of his probation. Second, petitioner was not told of the evidence against him. Thus, petitioner was denied the right to confront and cross-examine witnesses against him. Finally, petitioner was denied the opportunity to present evidence that might rebut the charge.

The trial judge also failed to make any formal findings of

fact, oral or written, upon which he based his decision to revoke petitioner's probation. When the trial judge announced his decision to revoke, he recited a litany of assault charges against petitioner dating back to 1972, all of which predated the 1980 assault conviction that was the basis of petitioner's probation. The record is replete with testimony from the probation officer, and the victim of the alleged assault. This testimony provides sufficient evidence to reasonably satisfy the court that petitioner had violated the terms of his probation. *State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976). However, due process requires that the finding of a probation violation be based *only on verified facts.* To satisfy this requirement, the trial court must provide a formal statement of the evidence relied on and the reasons for its decision. The court's failure to provide such a statement in this case precludes effective judicial review as required by due process.

Despite these obvious constitutional due process violations, the State contends that because the record supports revocation regardless of the existence of the secret report, petitioner is unable to make a prima facie showing of actual prejudice.

Assuming for the moment that there was error in the probation revocation proceeding, the petitioner has a fairly persuasive argument that the Acting Chief Judge of the Court of Appeals erred altogether in requiring petitioner to establish a prima facie showing of actual prejudice. *See In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). This court has recently held that prejudice to a personal restraint petitioner will be presumed for certain types of constitutional error. *In re Richardson,* 100 Wn.2d 669, 679, 675 P.2d 209 (1983). The opinion in *Richardson* suggests that those types of constitutional error which can never be considered harmless on direct appeal will also be presumed prejudicial for purposes of personal restraint petitions. The United States Supreme Court also has held that there are some constitutional rights so basic to a fair trial that their denial can never be treated as harmless error. The error here was,

in part at least, a denial of the right of confrontation and cross examination. The United States Supreme Court has repeatedly stated that denial of the right to effective cross examination is "constitutional error of the first magnitude" and that "no amount of showing of want of prejudice [will] cure it." *Davis v. Alaska,* 415 U.S. 308, 318, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *Smith v. Illinois,* 390 U.S. 129, 131, 19 L. Ed. 2d 956, 88 S. Ct. 748 (1968); *Brookhart v. Janis,* 384 U.S. 1, 3, 16 L. Ed. 2d 314, 86 S. Ct. 1245 (1966). Thus, it is even questionable whether the actual prejudice standard of *Hews* even applies to denial of the right to confrontation.

We need not decide this issue, however, because we are persuaded that petitioner has made a prima facie showing both that error occurred and that this error worked to his actual prejudice.

■ Concerning the alleged error, it would be unconscionable to hold that the petitioner cannot prevail unless he can prove on the record that the trial court actually considered the secret report. It is the nature of such secret proceedings that they are kept from the defendant, who learns of them, if at all, much later. Moreover, the report was clearly *meant* to have some influence on the trial court; it is difficult to believe given the content of the report that it would not influence a judge who read it. Petitioner's underlying conviction was for assault. One of the alleged violations which was not secret was that petitioner had again assaulted someone. Petitioner's version of this alleged violation, however, was that the other man started the incident. The secret report, which alleged other assaults, may have been devastating to petitioner's argument that the trial court should believe his version of this incident. The probation officer also said in the secret report that he believed that the secret information provided credence to the statements made by others in the community about petitioner's propensity to intimidate and assault. The secret report also supported the allegation that petitioner had been using alcohol, and further suggested that his

arrest for driving while intoxicated was not an isolated incident. Under these circumstances, petitioner has made a prima facie showing that error occurred.

■ Concerning whether this apparent error actually prejudiced petitioner, the State's argument would have us hold that even the most flagrant constitutional violation in probation revocation proceedings will never be considered prejudicial if there exists evidence of other charges sufficient to prove them as violations. As suggested in *Lawrence,* however, the harm in denying the right to present evidence and the right to confront and cross-examine witnesses is the possibility that the trial court will rely on unverified evidence in revoking probation. Moreover, even if some violations are validly proven, the court's decision to revoke is still discretionary, and depends as much on mitigating factors as it does on probation violations. *See In re Akridge,* 90 Wn.2d 350, 581 P.2d 1050 (1978). It seems highly likely that a trial court would be much more prone to revoke probation if it has evidence before it like that contained in the secret report. Petitioner has made as good a prima facie case of prejudice as can be made in this type of case.

## CONCLUSION

Petitioner Boone has made a prima facie showing of error, and a prima facie showing of prejudice. This court's opinion in *Hews* holds that when a petitioner had made such a prima facie showing the petitioner is entitled to a superior court hearing, either on the merits or to resolve a factual question in a reference hearing. In the present case, the superior court is instructed to hold a hearing to determine whether the secret report was considered by the court at the revocation hearing and, if so, whether it made a difference in the court's decision. The superior court should dismiss the petition if the secret report made no difference in its decision to revoke, but it must hold another revocation hearing if it did. In the event a new hearing is held, the court should comply with the *Scarpelli* requirements and

236

enter formal findings on the record stating the reasons for the court's decision.

WILLIAMS, C.J., and UTTER and PEARSON, JJ., concur.
BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., concur in the result.