84 P.3d 944 (2004)
STATE of Washington, Respondent,
v.
Khatib M. ABD-RAHMAAN, Appellant.
No. 51856-9-I.
Court of Appeals of Washington, Division 1.
February 23, 2004.
Reconsideration Denied March 18, 2004.
*945 Carla Barbieri Carlstrom, King Co Pros Office, Seattle, WA, for Respondent.
Gregory Charles Link, WA Appellate Project, Seattle, WA, for Appellant.
COLEMAN, J.
The issue in this case is the level of due process applicable in sentence modification hearings. Because sentence modification hearings are similar to probation and parole revocation hearings, we hold that the same due process requirements, as announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), also apply to sentence modification hearings. The major issue in this case is whether this right to confrontation necessitates a specific, written finding that hearsay evidence is reliable and that the difficulty and expense of presenting live witnesses constitutes good cause for admitting the hearsay evidence. We hold that Morrissey does apply to sentence modification hearings and, therefore, persons accused of violating conditions of their sentences are entitled to the same minimum due process protections as provided for in Morrissey. We conclude, however, that the lack of specific findings regarding the reliability of hearsay evidence and the difficulty of procuring live witnesses is not fatal in this case because both reliability and difficulty can be determined from the record. But we take this opportunity to remind trial courts to make specific findings regarding both the reliability of the evidence and the difficulty and expense of presenting live testimony to ensure that minimum due process rights are protected. We affirm the sentence modification here, as Abd-Rahmaan's due process rights were not violated because the hearsay statements were reliable and requiring live testimony would be unnecessarily costly and burdensome.

Facts
Khatib Abd-Rahmaan was sentenced to 38 months in custody and one year of community placement. As part of his community placement Abd-Rahmaan was required to report to his community corrections officer (CCO). In January 2003, the State filed a Notice of Sentence Modification Hearing and Motion to Show Cause alleging Abd-Rahmaan violated his sentence by failing to report to his CCO.[1]
At the modification hearing, Chris Salatka, Abd-Rahmaan's CCO, testified that he instructed Abd-Rahmaan to report on days when he was not working at the Millionaires' Club. Salatka testified that Abd-Rahmaan did not report to him on five different days. The Millionaires' Club told Salatka that Abd-Rahmaan *946 did not work on the days in question and had, in fact, been fired on his first day of work because of unsatisfactory performance at FedEx. Salatka also testified that he spoke with a representative of FedEx who confirmed that FedEx told the Millionaires' Club that Abd-Rahmaan could no longer work at FedEx. Abd-Rahmaan objected to the testimony as inadmissible hearsay, but the trial court allowed it. Abd-Rahmaan testified that he had worked on the days in question and that it was the practice of the Millionaires' Club to provide only one work slip on the first day and not give new slips for subsequent days worked on the same job. He, however, did not offer any corroborative testimony or evidence.
The trial court found that Abd-Rahmaan violated his sentence by failing to report to his CCO and sanctioned him with 60 days' confinement.

Discussion
The first issue we address is whether this case should be dismissed as moot because Abd-Rahmaan has already been released from custody. A case is moot when the court can no longer provide effective relief. Hart v. Dep't of Soc. Health Servs., 111 Wash.2d 445, 448, 759 P.2d 1206 (1988). This court may reach the merits of an appeal if the case presents a matter of continuing and substantial public interest. Hart, 111 Wash.2d at 448, 759 P.2d 1206. In making this determination, the court will look to three essential factors: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." Hart, 111 Wash.2d at 448, 759 P.2d 1206. Issues involving sentence modification procedures are of a public nature. Additionally, there is no Washington case that specifically holds that the Morrissey requirements apply to sentence modification hearings. Therefore, further guidance on the issue is desirable. Under RCW 9.94A.634(c), the maximum sanction for each sentence violation is 60 days' confinement. Because of this maximum sanction, it is likely that any potential appellant will be released before the appeal is completed. Therefore, this issue is of continuing and substantial public interest and we will address the merits of the appeal.
Next, we address whether the due process requirements of Morrissey apply to sentence modification hearings. A probation violation hearing is not a criminal proceeding. In re Pers. Restraint of Boone, 103 Wash.2d 224, 230, 691 P.2d 964 (1984). Because it is not a criminal proceeding, the probationer does not enjoy the same due process protections afforded to those accused of a crime. Boone, 103 Wash.2d at 230, 691 P.2d 964. The probationer, however, is entitled to minimal due process protections. State v. Dahl, 139 Wash.2d 678, 683, 990 P.2d 396 (1999). Before parole can be revoked, the following protections must be afforded:
(a) written notice of the claimed violations or parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body ...; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole.
Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. These protections have been extended to special sexual offender sentencing alternative (SSOSA) revocation hearings and community custody revocation hearings conducted by the DOC. Dahl, 139 Wash.2d at 678, 990 P.2d 396; In re Pers. Restraint of McNeal, 99 Wash.App. 617, 994 P.2d 890 (2000). The State acknowledges that there is no reason why these same protections should not be applied to a sentence modification hearing held before a superior court judge. Because sentence modification hearings are substantially equivalent to the other revocation hearings, the same due process rights should apply. Thus, we hold that the requirements of Morrissey apply to sentence modification hearings.
Abd-Rahmaan argues that his due process rights were violated because the trial court allowed the State to use hearsay evidence *947 without making specific findings that the hearsay was reliable and that there was good cause not to require live witnesses. One of the elements of due process under Morrissey is the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. Morrissey, however, does not provide an absolute right to confrontation:
"While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the Morrissey requirements."
Nelson, 103 Wash.2d at 763, 697 P.2d 579 (quoting Gagnon v. Scarpelli, 411 U.S. 778, 783, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). Instead, the court is to engage in a balancing test, weighing the right to confrontation against good cause for not allowing confrontation. Nelson, 103 Wash.2d at 763, 697 P.2d 579. "Good cause has thus far been defined in terms of difficulty and expense of procuring witnesses in combination with `demonstrably reliable' or `clearly reliable' evidence." Nelson, 103 Wash.2d at 765, 697 P.2d 579. Nelson demonstrates that the test itself is flexible and potentially subject to some modification as evidenced by the "thus far" phraseology.
Here, the State urges the court to focus on the reliability of the hearsay testimony and suggests that as long as the testimony is deemed reliable, a specific finding of difficulty in presenting live testimony is not necessary to satisfy the limited right to confrontation. Abd-Rahmaan argues, on the other hand, that a court must make specific findings on both the reliability of the hearsay evidence and the circumstances that warrant its use. While we believe reliability to be the primary factor, Nelson presently requires a consideration of the practical difficulty of requiring live testimony in addition to examining the reliability of that testimony.
Abd-Rahmaan argues that the CCO's testimony regarding his conversations with FedEx and the Millionaires' Club was not reliable hearsay and, therefore, the court should not have considered it. In support of this argument, Abd-Rahmaan points to the factors for determining reliability in a preconviction setting announced in State v. Ryan, 103 Wash.2d 165, 170, 691 P.2d 197 (1984).[2] Abd-Rahmaan argues that the same factors should be considered in postconviction hearings. A person accused of violating conditions of a sentence, however, is not entitled to the full protections of due process afforded in a preconviction setting. Other cases discussing the reliability of evidence in a postconviction setting have not examined the Ryan factors in making the determination of whether hearsay was reliable. See Nelson, 103 Wash.2d at 765, 697 P.2d 579. In addition, "[t]he Ninth Circuit has held hearsay evidence from state probation reports is sufficiently reliable[.]" State v. Badger, 64 Wash.App. 904, 908, 827 P.2d 318 (1992) (citing United States v. Miller, 514 F.2d 41, 42 (9th Cir.1975)). While the hearsay evidence must be reliable, the trial court is not strictly confined by the factors set forth in Ryan. Rather, the court is to consider any relevant factor that bears on reliability.
The hearsay at issue here is the CCO's testimony regarding Abd-Rahmaan's *948 employment status as reported by the Millionaires' Club. This is a straightforward inquiryeither Abd-Rahmaan worked on the days in question or he did not. The employer would have this knowledge, and this information would routinely be recorded by the employer. Moreover, the representatives from the Millionaires' Club and FedEx gave the CCO detailed accounts of the circumstances that led up to Abd-Rahmaan's termination. The court could look at this detail as evidence of the reliability of the testimony. Abd-Rahmaan also participated in the hearing and was able to give his version of the events and disagree with the version presented by Salatka. He could have also requested witnesses or presented corroborative evidence had he wished to do so. The trial court is in the best position to assess credibility and the reliability of the evidence offered, and we will not interfere with that decision. We conclude that the hearsay testimony here presents adequate indicia of reliability.
Abd-Rahmaan also argues that his right to due process was violated because the court did not specifically find good cause for allowing the hearsay evidence. The difficulty and cost of presenting live witnesses is good cause for admitting reliable hearsay at sentence modification hearings. Nelson, 103 Wash.2d at 764, 697 P.2d 579. In Badger, the court specifically allowed the use of hearsay evidence in a SSOSA revocation hearing without discussing the need to make a specific finding that it would be difficult and expensive to produce live witnesses. Additionally, in Nelson, the court held that reports from the defendant's therapists at Western State Hospital were sufficiently reliable and that the expense and difficulty of requiring therapists to testify at every hearing was sufficient to justify the use of hearsay evidence. While the trial court here did not make the specific finding that it would be difficult or expensive to require the State to produce live witnesses regarding employment status, it can be inferred that such difficulty exists. Verification of employment is applicable to many probation and sentence modification hearings, and requiring the State to produce employer representatives for this verification in every case would be costly and unnecessarily burdensome on employers. In fact, requiring employers to routinely testify at such proceedings could easily discourage the hiring of persons on probation or subject to community custody. Common sense considerations support the reliability of the hearsay testimony and requiring witnesses to appear would have occasioned unnecessary inconvenience and expense. Under the circumstances, Abd-Rahmaan's due process rights were not violated by the use of hearsay. We conclude that the hearsay was reliable and warranted from the record in this case. Trial courts are reminded, however, to make specific findings concerning the reliability of the hearsay testimony offered and that good cause exists for its use. This will help to ensure that the accused's due process rights are protected.
Abd-Rahmaan also argues that the trial court's failure to make a written statement of the evidence relied upon and the reasons for its decision violated his due process rights. Under Morrissey, due process requires, "a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. The lack of a written statement is not fatal if the trial court indicates, on the record, what evidence it relied upon. Nelson, 103 Wash.2d at 767, 697 P.2d 579. The only evidence presented at the hearing was the evidence regarding the violation in question. It is therefore possible for this court to determine what evidence the trial court relied upon.
Additionally, the record is sufficient for this court to determine the reasons for the trial court's decision. The only evidence presented was the testimony of Salatka and Abd-Rahmaan about Abd-Rahmaan's employment status. It is thus clear that the trial court found the CCO's testimony to be credible and based on reliable information, and the trial court based its decision on that testimony. While a more appropriate practice would be for trial courts to make statements on the record specifically outlining the evidence relied upon and the reasons for their decisions, the record in this case is sufficient to allow effective appellate review.
*949 We emphasize that hearsay evidence is not automatically admissible in sentence modification hearings, and is only admissible when it is reliable and there is good cause to allow it to be used. We reiterate that trial courts should make specific written findings, or at a minimum express oral findings on the record, regarding both the reliability of the hearsay evidence and the difficulty or expense of presenting live testimony before allowing hearsay evidence to be used at sentence modification hearings. Additionally, trial courts should make written or clear oral statements of the evidence relied upon and the reasons for its decisions. These procedures will serve to ensure proper due process protections.
Affirmed.
WE CONCUR: BECKER, C.J., and COX, A.C.J.
NOTES
[1] The notice of hearing listed two additional violations failing a polygraph test and using controlled substances. Abd-Rahmaan was not ordered to submit to polygraph tests as a condition of his sentence, and the only evidence of drug use was obtained from a polygraph test. The trial court found that he did not violate the conditions of his sentence under these allegations.
[2] The factors are:

"`(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declaration and the relationship between the declarant and the witness.' ... [6] the statement contains no express assertion of past fact, [7] cross examination could not show the declarant's lack of knowledge, [8] the possibility of the declarant's faulty recollection is remote, and [9] the circumstances surrounding the statement are such that there is no reason to suppose the declarant misrepresented defendant's involvement." Ryan, 103 Wash.2d at 175-76, 691 P.2d 197 (quoting State v. Parris, 98 Wash.2d 140, 146, 654 P.2d 77 (1982) and citing Dutton v. Evans, 400 U.S. 74, 88-89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)).