[No. 50790-2. En Banc. April 4, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. LORENCE JOHN NELSON, *Petitioner*.

*Nancy L. Talner* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

BRACHTENBACH, J.—Defendant challenges the revocation of his suspended sentence and imposition of a 20–year term of imprisonment. The principal issue is whether revocation can be based upon facts and conclusions contained in written hearsay reports to which no objection was made. The

Court of Appeals affirmed by an unpublished opinion. *State v. Nelson,* 37 Wn. App. 1061 (1984). We affirm.

The defendant had pleaded guilty to first degree assault and first degree rape, both while armed with a deadly weapon, and to first degree robbery and second degree assault. All charges arose from sexual assaults upon teenage girls. The prosecutor had recommended a suspended sentence with treatment as a sexual psychopath. After preliminary observation at Western State Hospital (WSH), defendant was given a sentence suspended on the condition that he successfully complete the in–patient sexual psychopathy program at WSH. Defendant entered the sexual psychopathy program. However, 7 months later the State moved to revoke his probation and suspended sentence on the grounds that he had failed to successfully complete the program.

At the revocation hearing the State presented no witness; instead, it furnished to defense counsel and the court written reports from WSH staff. Those reports apparently stated that the defendant had not applied himself to the program and that he was unsafe to be at large. One report concluded that defendant was not amenable to treatment and should be transferred to prison, while the other one concluded that defendant should remain at WSH. Defense counsel made no objection to the use of these reports nor to the failure of the State to introduce them into the record.

The defense presented affidavits from other participants in defendant's treatment group, live testimony from other inmates and defendant's mother, and quotes from staff reports.

The trial court, in its oral decision, referred to the staff reports, the affidavits and testimony. The court chose to accept the staff's analysis that defendant did not apply himself and did not work hard enough in the program. Therefore, the court found defendant unamenable to treatment and unsafe to be at large and revoked the suspended sentence.

While one under a conditional suspended sentence

order has a very limited liberty interest, that person is entitled to minimal due process rights. *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). In *Morrissey* and *Gagnon,* the Supreme Court articulated minimum due process requirements of both parole and probation revocation hearings. This court recently applied those same requirements to a probation revocation hearing in *In re Boone,* 103 Wn.2d 224, 691 P.2d 964 (1984). Of these requirements, two, pertinent to the present case, are:

> (d) The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); . . . (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*In re Boone,* at 231 (quoting *Gagnon,* at 786).

■ With regard to the right of the defendant to confront and cross-examine adverse witnesses, the Court said that the hearing process was to be flexible enough for the trial court to consider evidence that would not meet the usual evidentiary requirements that apply to criminal trials. *Morrissey,* at 489. The *Gagnon* Court added that the right to confront and cross-examine was not an absolute right to be afforded in *every instance.* It was said in *Gagnon:*

> While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

*Gagnon,* at 783 n.5. Washington courts have in the past limited the probationer's right of confrontation by admitting hearsay evidence in probation revocation proceedings.

*State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968); *State v. Smith,* 13 Wn. App. 859, 539 P.2d 101 (1975).

Other jurisdictions have also consistently held that the fact finder at a revocation hearing may consider hearsay evidence. The federal courts have referred to the requirements of *Gagnon* and *Morrissey* and held that the hearing officer must balance the probationer's right to confront and cross-examine witnesses against any good cause for not allowing confrontation. *United States v. Penn,* 721 F.2d 762, 763 (11th Cir. 1983). Since the test is a balancing one, there can be no fixed rules on what would constitute good cause in every case. *Penn,* at 764.

The *Gagnon* dictum in 411 U.S. at 783 n.5 suggests that the difficulty and expense of procuring live witnesses is an excuse for admitting hearsay testimony. The federal circuit courts faced with the issue have tended to focus on "indicia of reliability" for admitting the hearsay evidence. *Egerstaffer v. Israel,* 726 F.2d 1231 (7th Cir. 1984). In *Egerstaffer,* the State's only evidence was the hearsay unsworn recorded interview with the victim. The court held that the good cause showing was excused whenever the proffered evidence bears substantial indicia of reliability. The indicia of reliability was evident in the detail of the victim's statement, as corroborated by other witnesses and admissions of the probationer. In *United States v. Penn, supra,* good cause was found for admitting the exclusively hearsay evidence against the probationer because the lab letters and reports were "trustworthy and reliable". Evidence which is "demonstrably reliable" has been found to constitute good cause for admitting hearsay evidence of letters of vocational instructors and caseworkers, and official reports from program officials. *United States v. Burkhalter,* 588 F.2d 604, 607 (8th Cir. 1978); *United States v. McCallum,* 677 F.2d 1024, 1026 (4th Cir.), *cert. denied,* 459 U.S. 1010 (1982). Evidence from the court files and state probation reports, all hearsay, was found "reliable and obviously sufficient to satisfy the court that appellant had violated the terms of his probation." *United States v. Miller,* 514 F.2d 41, 42

(9th Cir. 1975). The Arizona courts have used a standard of "clearly reliable" when testing hearsay which is exclusively used as a basis for revoking probation. *State v. Valenzuela,* 116 Ariz. 61, 567 P.2d 1190 (1977) (letter of drug treatment program officer to probation officer is clearly reliable); *State v. Belcher,* 111 Ariz. 580, 535 P.2d 1297 (1975).

Defendant relies heavily upon dicta contained in *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968), which states that a probationer's due process rights support his claimed right of confrontation only when the significant matter at issue is presented through hearsay and is otherwise unsupported and materially denied by the probationer. This dicta was written before the *Gagnon* and *Morrissey* decisions. The current test is a balancing one in which the probationer's right to confront and cross–examine witnesses is balanced against any good cause for not allowing confrontation. Good cause has thus far been defined in terms of difficulty and expense of procuring witnesses in combination with "demonstrably reliable" or "clearly reliable" evidence.

Defendant argues that the above principles do not permit the use of unreliable hearsay. *Unreliable* hearsay may not be the sole basis for revocation of probation. However, where it not only appears that the reports of program staff therapists contain factual assertions about defendant's use of the program solely to avoid prison and his failure to expend sufficient time and energy to succeed in the program, but also that these assertions are corroborated by the statements of probationer and other witnesses, such hearsay report evidence is demonstrably reliable. The existence of such demonstrably reliable evidence in combination with the expense and difficulty in requiring a mental health therapist to testify in person at every probation hearing constitutes good cause for allowing the hearsay reports in the probation revocation hearing. Defendant's argument goes to the weight of the testimony and is nothing more than an argument on the merits. That argument does not prove an absence of due process.

Likewise, reliance upon *State v. Bartholomew,* 98 Wn.2d

173, 654 P.2d 1170 (1982), *vacated and remanded,* 103 S. Ct. 3530, *defendant's cert. denied,* 103 S. Ct. 3548 (1983) is misplaced. The language of *Bartholomew* must be read in the context of an adversarial proceeding seeking the death penalty.

██ ██ Defendant's arguments fail on another ground. Defendant made no objection to the procedures used by the State. He did not object to use of the staff reports nor to the failure to introduce them into evidence. Indeed, when the State objected to defendant's quoting from a therapist's notes, the defendant contended that "rules of evidence do not apply to probation revocation hearings." The defendant pointed out that the State relied upon written reports, with no live testimony, and the court should have all pertinent information from all sources. Defendant's only objection came in the form of a motion after the court's ruling regarding the insufficiency of evidence in support of the court's decision to revoke probation. Defendant's failure to object to a violation of due process and his own use of hearsay during argument constituted a waiver of any right of confrontation and cross examination.

As noted by the United States Supreme Court, there may be instances where there is no substitute for live testimony, thereby providing a right of confrontation and cross examination. *Gagnon,* 411 U.S. at 783 n.5. If the probationer believes such is necessary for protection of his due process rights he can seek a pretrial order from the trial court or challenge the State's evidence by timely objection or at the end of the State's case. Such suggested procedures guarantee the probationer's due process right. The probationer may not sit by, without objection (and in fact use similar hearsay evidence), and then on appeal for the first time claim lack of due process. Revocation of probation is so much within the discretion of the trial court, *State v. Kuhn,* 81 Wn.2d 648, 503 P.2d 1061 (1972), that the probationer must bear some responsibility for the orderly administration of the process. Such simple suggested notification, objection or motion does not unduly burden the probation-

er's rights or relieve the State of its burden of proof. So long as probationer's minimal due process rights are protected to an appropriate degree, the ultimate decision rests in the discretion of the trial court, subject to appellate review. Defendant simply has both failed to show the merits of his claim and failed to raise the issue of due process right of confrontation at any stage prior to appeal.

Defendant also argues on appeal that the failure of the court to make a written statement as to the evidence relied on and reasons for revoking constitutes a violation of a second minimal due process right set out in *Gagnon* and *Morrissey.* Written findings are preferable because they facilitate appellate review, allowing the appellate court to ascertain the presence or absence of substantial evidence in support of the decision to revoke. *State v. Davenport,* 33 Wn. App. 704, 657 P.2d 794 (1983), *rev'd on other grounds,* 100 Wn.2d 757, 675 P.2d 1213 (1984). However, the lack of specific written findings is not fatal where, as here, the trial court states on the record the evidence it relies upon and states its reasons for revocation. *State v. Murray,* 28 Wn. App. 897, 627 P.2d 115 (1981).

Finally, defendant argues on appeal that the failure to introduce the staff reports constitutes reversible error. While it is difficult to understand why the prosecutor did not introduce the written reports, and such practice is obviously not appropriate, it is clear that the court and both parties had copies of the reports. They were the subject of extensive argument. The error was harmless.

In addition, the failure of the defense to fully cooperate in the appellate process deserves comment. Defense counsel argued in oral argument that this court should be able to view the staff reports in their entirety. Yet, the defense has refused to supply these reports to this court. We are cognizant of the responsibility owed by counsel to the probationer. A simple waiver by the defendant, however, would have facilitated the process of justice and avoided any tactical game playing with this court.

In summary, defendant has failed to show an abuse of

discretion in the trial court's revocation of probation. Minimal due process was provided through the presentation of the clearly reliable staff reports and through the oral analysis by the trial court of the evidence used and the rationale for its decision.

Affirmed.

DOLLIVER, C.J., UTTER, DORE, PEARSON, ANDERSEN, and GOODLOE, JJ., and JAMES and THOMPSON, JJ. Pro Tem., concur.