IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32144-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN B. SNOW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kevin Snow appeals from three felony convictions entered following his termination from a drug court program. Concluding that his due process protections were honored, we affirm.

FACTS

Mr. Snow was charged in the Spokane County Superior Court with one count of second degree theft and two counts of first degree trafficking in stolen property. He elected to enter drug court and his application for that program was approved. He agreed that his entry into the program effectuated a waiver of several important rights, including the right to a jury trial, the right to testify and present evidence, and the right to cross-examine the State's witnesses. He also waived the right to be present at drug court staffing meetings. The agreement also detailed several grounds for termination from the

program. Those grounds included falsifying or tampering with urinalysis samples.

Charges were to be dismissed with prejudice upon successful completion of the program.

Mr. Snow was accepted into the program April 25, 2013.

Mr. Snow's performance in drug court was checkered. He received his first

sanction for violating his drug court agreement—an indefinite term of partial

confinement and 64 hours of community service—on June 6, 2013. By August 9, a

bench warrant issued for his arrest because his whereabouts were unknown. He was

apprehended and on August 28, the court again imposed a sanction for failing to meet his

program obligations. The court ordered Mr. Snow confined to the work release facility,

directed that he complete 40 hours of community service, and be evaluated for inpatient

treatment.

Mr. Snow did not successfully progress in the program. After earlier efforts to

meet failed, a termination hearing was held on October 23, 2013. The program judge

detailed at length the course of events:

> We had some of [sic] difficulties early on, and I will describe those.
> Had a stall test—excuse me—a positive on 4/26 and a no show on 5/22. He
> did attend treatment the first couple weeks he was with us. He completed
> his DOC orientation. He came back on 5/6—excuse me—5/6 there was a
> stall. 5/8 was a no show for a drug test. 5/15 and 5/16 were positives.
> Came back on 5/16 for a review hearing, and on that date I noted he missed
> treatment on 5/1, 5/3 and 5/8.
> He expressed to us some transportation issues. He had not kept his
> work crew appointment. There was some difficulty with contacting DOC.
> And we talked about the fact that he had to be more compliant.

2

He then had a negative drug test on May 20th. And he attended all of his treatment, and appeared to be engaged in Drug Court at that point, although he missed his work crew orientation the day before court. We reset this matter for a review hearing two weeks out, as is our normal course, our practice.

He had a stall on 5/29. A no show on 5/30. A positive on 6/5. Missed treatment on 5/29 and 5/31. He missed a one-on-one on 5/21 and 5/23. When he came in on 6/6, I had him sent to the jail and then off to Geiger. By then he had accumulated 104 hours of community service.

We also had some concern about his housing, only because we couldn't verify everyone who was there in terms of who they were. That was really a secondary issue.

He was in jail for six days. He went to Geiger on 6/12. He was in Geiger until July 18th, so over a month; 36 days if my math is correct, roughly. He was released on July 18th. And he completed his community service hours by that point in time, and he was placed back into the program.

He missed a drug test on 7/23, but was negative on 7/25. He came back to court on 7/25. He had attended treatment.

We of course moved forward. It is our practice to continue to work with folks.

And on 7/26 unfortunately he had another stall. A positive on 8/1. A no show on 8/7. He was not in court at his scheduled review date of 8/8. He missed treatment on 7/24, 7/29 and 8/8. And because he did not appear on 8/8, I had a warrant issued, or I requested the state to give me a warrant. And then that warrant was in the system.

And Mr. Snow was arrested within about ten days; I believe he was arrested on August 17th. And we held a hearing on 8/28, and left Mr. Snow in Drug Court; we gave him another opportunity, you would say. And I believe we had a talk about being compliant and what was expected, and the fact that we had been through this one time before.

He was in jail for several days. He was transported out to Geiger to recommence. We did have an assessment done for inpatient. We did offer that service. And the recommendation was not—was no inpatient at that time, so we restarted treatment again, and assigned him to find Oxford housing this time.

He had started at Geiger I believe on 9/3 . . . He was due to be released I believe on 9/25 . . . On that date we were notified in staffing that Geiger had taken samples, UA samples, on 9/9 and 9/12, and both had

3

come back as dilute, so those were sent off for testing or to—had been tested in a lab. And based upon our protocol, which is to set folks for termination when we have dilutes, we set it for termination. And that was a month ago, essentially; it is now 10/23.

Report of Proceedings (RP) at 13-16.

Mr. Snow was represented at the hearing by his drug court counsel who concurred in the court's recitation of his client's history in the program. The prosecutor orally moved the court to accept the treatment provider's recommendation that Mr. Snow be terminated from the program. The drug counselor indicated that laboratory testing confirmed that both of the two most recent urinalysis samples had been watered down. In one instance, a jailer had instructed Mr. Snow to stop trying to use the sink while providing his sample.[1] The counsellor also noted Mr. Snow's history was more extensive than the court had indicated, stating that there had been "two additional stalls," "four additional no shows," and "11 no shows for group." RP at 24.

Defense counsel indicated his familiarity—and disagreement with—the treatment provider's proposal. He indicated that he had earlier received e-mails indicating that his client had twice provided diluted samples for testing while at the work release facility. Counsel agreed that the samples were diluted, but argued that they were the result of excessive drinking during the day. Mr. Snow addressed the court at length and supported

---

[1] The information was provided in response to Mr. Snow's grievance to jail authorities that the jailers were setting him up to fail the testing.

4

his counsel's argument—in part by reading a letter he had written and attempted to send to the judge. He pointed out that there is little to do at work release except drink coffee all day and that it would be impossible to water down the samples because of the way the testing is conducted in the presence of the jailers.

The court pointed out the critical importance of diluted samples to the drug court program. In addition to masking drug use, the diluted samples show that the client is not being honest with himself and simply cannot succeed in the program. While he would have been willing to work further with Mr. Snow if there had been an otherwise pretty good performance, the court was unwilling in light of his record and the need of the drug court program to not excuse diluted samples. He revoked Mr. Snow from the program.

A trial was subsequently held on stipulated facts. Mr. Snow was convicted on the three counts and sentenced to a standard range prison sentence. He then timely appealed to this court.

## ANALYSIS

This appeal presents various due process challenges to the revocation of Mr. Snow's drug court participation. After reviewing his general ability to raise these claims, we address his specific challenges as part of his general due process challenge.

The Fourteenth Amendment guarantees due process of law. In the context of revocation decisions, due process affords a few minimal guarantees: written notice, disclosure of evidence, opportunity to be heard, right to confront witnesses, a neutral

5

decision-maker, and a written statement of evidence considered. *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *State v. Nelson*, 103 Wn.2d 760, 763, 697 P.2d 579 (1985) (sentence revocation); *In re Boone*, 103 Wn.2d 224, 231, 691 P.2d 964 (1984) (probation revocation); *State v. Marino*, 100 Wn.2d 719, 725, 674 P.2d 171 (1984) (pretrial diversion agreement revocation); *State v. Cassill-Skilton*, 122 Wn. App. 652, 653, 94 P.3d 407 (2004) (drug court revocation).

Mr. Snow essentially argues that most of these minimal protections were not provided to him. However, he made no such claim below and, as a result, the record is lacking information on many of these claims. That presents the fundamental question of whether or not this court is even in a position to address Mr. Snow's arguments.

The general rule in Washington is that an appellate court will not consider an issue on appeal which was not first presented to the trial court. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). However, RAP 2.5(a)(3) permits a party to raise initially on appeal a claim of "manifest error affecting a constitutional right." The error must be both (1) manifest and (2) truly of constitutional magnitude. *Id.* at 688. It is "manifest" if it either (1) "results in actual prejudice to the defendant," or (2) the party has made a "plausible showing" that the error had "practical and identifiable consequences" to the trial. *State v. WWJ Corp.*, 138 Wn.2d 595, 602-03, 980 P.2d 1257 (1999) (citations and internal quotation marks omitted).

6

Mr. Snow clearly states a constitutional claim. Whether or not it is manifest is unclear. The prosecution does not squarely challenge his ability to make the due process argument, but does argue that several of the specific claims were waived by the drug court agreement. In reply, Mr. Snow contends that he has satisfied the criteria of RAP 2.5(a)(3) and does not address the waivers included in the drug court application form.[2]

On the whole, we are uncertain whether Mr. Snow can maintain his due process challenge in these circumstances. Nonetheless, since his arguments also are negatively impacted by his failure to challenge the procedures during the revocation hearing, we will address them.

Mr. Snow initially claims that he did not receive sufficient notice of the intent to terminate him from the program, arguing that the record lacks written notice of the alleged violations. On this record, we cannot tell if this claim is correct or not, but we can tell that Mr. Snow's counsel received an e-mail from the treatment provider indicating his intent to seek termination from the program due to the two diluted samples. RP at 19. Mr. Snow personally prepared a written response to that notice, and defense counsel conducted research, talked to his client, and came to the hearing prepared to argue against the proposal. Very tellingly, the defense did not demand any additional

---

[2] The waiver provision does address drug court staffing meetings as well as matters of trial-related rights such as the right to a speedy trial. It also addresses generically issues such as cross-examination and the ability to call witnesses that might apply to both trial and revocation procedures.

notice nor seek additional time[3] to respond to the issue. The drug court agreement

likewise put the defense on notice that invalid samples were a basis for termination.

The defense evidenced no surprise about the purpose of the hearing. In this

circumstance, we doubt that the alleged error is truly manifest. At a minimum, any error

was clearly harmless under these facts. Accordingly, we conclude that Mr. Snow has not

established that he was prejudiced in any manner from the proceedings below.

Mr. Snow next argues, on several bases, that his confrontation rights were violated

when the court admitted the diluted test results without a witness being called whom the

defense could examine. This argument fails for numerous reasons.

The primary reason is one noted in *Nelson*. There the defendant did not object to

the use of written reports from staff and even pointed out, in response to the State's

objection, that the rules of evidence did not apply at a revocation hearing. 103 Wn.2d at

766. The court focused on the defense failure to object to the procedures used at the

hearing.

> Defendant's only objection came in the form of a motion after the court's
> ruling regarding the insufficiency of evidence in support of the court's
> decision to revoke probation. Defendant's failure to object to a violation of
> due process and his own use of hearsay during argument constituted a
> waiver of any right of confrontation and cross examination.

---

[3] The record does reflect that the October 23 hearing was the third attempt in a one month period at holding the revocation hearing. RP at 15-16.

As noted by the United States Supreme Court, there may be instances where there is no substitute for live testimony, thereby providing a right of confrontation and cross examination. [citation omitted] If the probationer believes such is necessary for protection of his due process rights he can seek a pretrial order from the trial court or challenge the State's evidence by timely objection or at the end of the State's case. Such suggested procedures guarantee the probationer's due process right. The probationer may not sit by, without objection (and in fact use similar hearsay evidence), and then on appeal for the first time claim lack of due process. . . . Such simple suggested notification, objection or motion does not unduly burden the probationer's rights or relieve the State of its burden of proof. . . . Defendant simply has both failed to show the merits of his claim and failed to raise the issue of due process right of confrontation at any stage prior to appeal.

*Id.* at 766-67.

Having not insisted on a right to confrontation below, Mr. Snow cannot claim error here. *Id.* The same rule applies at trial. Absent a timely objection on confrontation grounds, a confrontation argument is waived. *E.g., State v. Schroeder*, 164 Wn. App. 164, 167-68, 262 P.3d 1237 (2011) (citing cases).

A second reason that Mr. Snow's confrontation-related claims fail is that he stipulated to the results. His counsel stated: "no one is contesting these are dilute samples." RP at 27. Having previously agreed to the evidence, he is in no position to challenge it now.

Mr. Snow's related hearsay challenge fares no better. As defense counsel noted in *Nelson*, 103 Wn.2d at 766, the rules of evidence do not apply to revocation hearings. ER 1101(c)(3). Hearsay rules apply in revocation proceedings only to the extent that a

revocation cannot be based *solely* on *unreliable* hearsay. *Nelson*, 103 Wn.2d at 765. A hearsay objection must be lodged if it is to be considered in this context. *Id.* at 764-67.[4]

For all of these reasons, the confrontation and hearsay related arguments fail. They also thus fail to constitute manifest constitutional error under these facts. RAP 2.5(a)(3).

Mr. Snow also argues that the court erred in not providing a written explanation of the evidence relied upon and the reasons for his termination from drug court. This issue, too, was addressed in *Nelson*. There it was noted that while due process requires a written explanation, "the lack of specific written findings is not fatal where, as here, the trial court states . . . its reasons for revocation." 103 Wn.2d at 767. Here, the trial court discussed at great length the consequences of diluted samples and the significance both to Mr. Snow and to the entire drug court program of disregarding them. The court's rationale here was clear in the record and, as in *Nelson*, any error in not reducing them to writing was harmless. *Id.*

Finally, Mr. Snow argues that the trial court erred in terminating him from drug court. As also noted in *Nelson*, the revocation decision is highly discretionary. *Id.* at 766-68. Mr. Snow was on notice from his entry into the program that diluted samples were a basis for termination from drug court. He agreed that he provided diluted

---

[4] It also appears that this drug court agreement waived the confrontation and hearsay objections. Clerk's Papers at 7.

10

samples. His defense was that it was an innocent mistake. Given that no one disputed that the samples were diluted, the evidence clearly supported the trial court's determination. Even at that, the court considered whether it was appropriate to continue Mr. Snow in the drug court program or not. The judge ultimately concluded that given his body of work to that point, there was no reason to continue giving more time to Mr. Snow. The diluted samples were the straw that broke the camel's back.

Drug court is a non-adversarial alternative to traditional criminal justice efforts. *Cassill-Skilton*, 122 Wn. App. at 657. The team effort at individual rehabilitation, closely supervised by the trial judge in an informal environment, is an uncomfortable fit with the requirements of due process when the defendant's case is not proceeding successfully. At that point the demands of due process require a shift to a more formal approach. A written notice of intent to revoke (or, at least, of the possibility of revocation), coupled with a statement of the reasons why, is necessary. A copy of that notice should make it into the appellate court record by way of filing in superior court.

If the court makes the determination to revoke participation in a therapeutic court, a written explanation of why that action was taken, including a review of the evidence supporting the decision, should enter. Again, we appreciate that these actions are at odds with the non-adversarial approach taken to that point. Nonetheless, when the focus is on removing someone from the program instead of assisting in recovery, the informality of the treatment modality must give way to the formalities of the adversarial process.

11

No. 32144-4-III
*State v. Snow*

Here, Mr. Snow received all of the due process rights he sought. The judge was well within his authority—indeed, he had showed great patience throughout the proceedings—to decide that enough was enough. Mr. Snow was not progressing and did not appear likely to progress further. The trial judge has great discretion at that point to conclude that the program's limited resources would be better served on someone else.

The decision to terminate Mr. Snow from the drug court program is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

12