IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33909-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS A. LIMPERT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| DESARAE M. DAWSON, | ) | |
| | ) | |
| Defendant. | ) | |

KORSMO, J. — Nicholas Limpert appeals his conviction for attempted second degree assault, arguing that the court should not have admitted statements made by his codefendant at trial, and that the prosecutor committed misconduct in closing argument. We affirm.

FACTS

Mr. Limpert and Deserae Dawson jointly were charged with conspiracy to commit robbery and robbery in the first degree. Mr. Limpert was also charged with attempted second degree assault. The charges arose out of a failed narcotics transaction at a Spokane hotel.

No. 33909-2-III
*State v. Limpert*

There is a reasonably large cast list for this production. In simplified form, victim Makelle Hamilton, her brother, and her boyfriend had excess narcotics they wanted to sell. They contacted an acquaintance, Brenden McCullough, and let him know they had pills for sale. McCullough in turn contacted Mr. Limpert and Ms. Dawson, and the three of them devised a plan to "short" Ms. Hamilton by disguising the size of the payment and leaving with the full amount of drugs for a partial payment.[1]

McCullough purchased the drugs by giving the undervalued amount of currency and also leaving, as collateral, the telephone belonging to another acquaintance, Michelle Pearson. McCullough, however, had no intention of ransoming the telephone with the remaining balance owed on the transaction. He departed with the drugs.

Ms. Pearson learned about the misuse of her telephone and went to Ms. Hamilton to retrieve it. Hamilton refused to return the phone and ejected Pearson from the hotel room. Pearson alerted Limpert and Dawson that she needed help to recover her telephone. Meanwhile, Ms. Hamilton's boyfriend had left to find McCullough, and then her brother left to find both men. Limpert and Dawson arrived at the hotel room to find Ms. Hamilton alone.

---

[1] The plan used the time-honored "big roll" method of providing a roll of money with the largest denomination on top and a large number of $1 bills underneath in order to leave the impression that the full amount of payment was present.

2

The duo demanded the return of Pearson's phone, with Limpert displaying a knife. Hamilton questioned the need to use a knife against a woman, so Limpert put it away and began choking Hamilton.[2] The victim's brother returned to the room and broke up the fight. After the defendants departed, Hamilton's brother reported the incident to a detective. The police investigated by contacting Ms. Hamilton and, later, Mr. Limpert and Ms. Dawson. The pills were recovered from Dawson's vehicle. She told police that she had not seen Limpert display a knife in the hotel room, but she had heard Hamilton say, "he just pulled a knife." The statement was later qualified for admission at the CrR 3.5 hearing. Neither of the attorneys for the two defendants objected to use of the statement.

At trial, Ms. Hamilton described the confrontation with Limpert and told jurors that he had pulled a knife on her. After putting the knife away, he choked her. The prosecutor subsequently called the detective to testify and elicited, without objection, the statement that Dawson reported Hamilton saying that "he just pulled a knife." When Limpert's counsel cross-examined the officer about where the two defendants had said they went after leaving the hotel room, the prosecutor objected, stating that "by not separating the defendants we're getting into the possibility of mixing some *Bruton*

---

[2] Although Limpert continues to deny choking her, the jury verdict establishes otherwise.

3

issues." Report of Proceedings (RP) at 344. Limpert's counsel then clarified his question by asking where *Ms. Dawson* had said the two were going.

The State rested at the conclusion of the detective's testimony. Mr. Limpert's counsel then called two witnesses who had discussed the incident with Ms. Hamilton. Both testified that Hamilton told them there was no physical altercation and there was no knife. Limpert's counsel then called Pearson to the stand. She testified that she had been involved in an altercation with Hamilton during her unsuccessful initial attempt to recover the telephone.

In closing, the prosecutor told jurors that taking a property by force or intimidation constituted robbery. "A great example is O.J. Simpson. He's in prison in Nevada right now for going into a motel room—." Defense counsel objected, stating "that's another state's law." The court overruled the objection and the prosecutor concluded that Simpson "thought he was going to get personal property of his own when he went into that motel room." RP at 420-421. Limpert's counsel attacked Hamilton's credibility and stressed her statements to the two defense witnesses that there was no altercation and no knife. He stressed that any assault Hamilton reported likely was the encounter with Pearson, not with Limpert and Dawson.

4

The jury acquitted Limpert of the robbery and conspiracy to commit robbery

counts, but convicted him of attempted second degree assault.[3] After sentencing, Mr.

Limpert timely appealed to this court.

## ANALYSIS

This appeal raises three issues.[4] First, we consider Mr. Limpert's contention that

his confrontation clause rights were violated by Hamilton's "he pulled a knife" statement.

Second, we consider his claim that the prosecutor committed misconduct by referencing

the O.J. Simpson robbery case. Finally, we summarily address the contention that the

trial court erred by imposing mandatory court costs totaling $800.

*Confrontation Clause*

Mr. Limpert argues that his right to confront Ms. Dawson was violated when the

detective elicited Dawson's statement reciting Hamilton's statement about Limpert

pulling a knife. Because of the failure to raise this claim at trial, he has not established

---

[3] Ms. Dawson likewise was acquitted on the robbery and conspiracy charges.

[4] Mr. Limpert also filed a statement of additional grounds raising two contentions. First, he argues that the acquittal on the robbery count was inconsistent with the attempted assault conviction because the prosecutor had to prove an intent to commit robbery in both charges. However, the failure to prove robbery does not necessarily mean that there was no intent to commit robbery. The jury may have been dissatisfied with some other element of the charge. Second, he contends that it was improper to run the assault sentence consecutive to an identity theft conviction arising from an incident after the assault incident. However, the court had absolute discretion to run the two sentences concurrently or consecutively as it saw fit. RCW 9.94A.589(3).

that there was manifest constitutional error justifying review of this issue, which also was at worst harmless error.

The confrontation clause of the Sixth Amendment to the United States Constitution guarantees an accused the right to confront the witnesses against him. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). This right, which applies to the states via the Fourteenth Amendment's due process clause, necessarily speaks to a defendant's right to cross-examine adverse witnesses. *Pointer v. Texas*, 380 U.S. 400, 404-405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). This protection has special significance in the context of co-defendants when one of them has made statements to the police that implicate the other defendant. *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). There the court ruled that the defendant Bruton's confrontation rights were violated when the codefendant's statement, implicating Bruton in a robbery, was admitted into evidence at their joint trial even though it was accompanied by a limiting instruction that told the jury only to consider the statement against the confessing defendant. *Id.* at 124-126.

Modern confrontation clause analysis is driven by *Crawford*. There the court concluded that the right of confrontation extended only to "witnesses" who "bear testimony" against the accused. 541 U.S. at 51. This "testimonial" hearsay rule reflected "an especially acute concern with a specific type of out-of-court statement." *Id.* "An

6

accuser who makes a formal statement to government officers bears testimony in a sense

that a person who makes a casual remark to an acquaintance does not." *Id.*

RAP 2.5(a)(3) provides that an issue of "manifest error affecting a constitutional

right" may be raised for the first time on appeal. While the Sixth Amendment is clearly a

constitutional right, the question of whether the confrontation clause itself presents an

issue of "manifest error" typically is not one that initially can be decided on appeal. The

reason for that is that the confrontation right must be asserted at trial lest it be waived.

*State v. O'Cain*, 169 Wn. App. 228, 247-248, 279 P.3d 926 (2012); *State v. Schroeder*,

164 Wn. App. 164, 168, 262 P.3d 1237 (2011).[5] This rule was reasserted, post-*Crawford*,

in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314

(2009). There the Court stressed that the States were free to require that confrontation

rights be asserted in order to be preserved:

> The defendant *always* has the burden of raising his Confrontation Clause
> objection; notice-and-demand statutes simply govern the *time* within which
> he must do so. States are free to adopt procedural rules governing
> objections. . . . It is common to require a defendant to exercise his rights
> under the Compulsory Process Clause in advance of trial, announcing his
> intent to present certain witnesses. . . . There is no conceivable reason why
> he cannot similarly be compelled to exercise his Confrontation Clause
> rights before trial.

*Id.* at 327 (citations omitted).

---

[5] This rule has long been followed by both the United States and Washington
Supreme Courts. *See, e.g., State v. Nelson*, 103 Wn.2d 760, 763, 697 P.2d 579 (1985)
(citing cases in context of sentence revocation proceeding).

By not objecting below, Mr. Limpert waived the confrontation claim on appeal. Accordingly, there is no manifest error that he can assert in this proceeding. The facts of this case also show why the waiver doctrine is important in this context. First, the "pulled a knife" statement is not even testimonial hearsay under *Crawford* that would violate the confrontation clause. The statement was made by Ms. Hamilton to the two defendants. This was not "testimony" being provided to the government for the purpose of trial. It was a remark between acquaintances.[6] Second, both the original declarant (Ms. Hamilton) and the ultimate declarant (the detective), testified at trial, so there was no confrontation clause violation as to either of them. The only person who was not available to testify was Ms. Dawson. Yet, Mr. Limpert's counsel repeatedly and successfully questioned the detective to get the substance of Dawson's interview with the detective before the jury.[7] It appeared to be the joint strategy of both defendants to downplay Hamilton's credibility by impeaching her "knife" testimony with the statements she subsequently made to the two defense witnesses denying that a knife was used. To that end, Dawson's statement that Hamilton claimed a knife was present was useful testimony for the defense.

---

[6] *See State v. Wilcoxon*, 185 Wn.2d 324, 373 P.3d 224, *cert. denied* 137 S. Ct. 580 (2016) (statement by one defendant to other acquaintance not testimonial hearsay despite *Bruton* doctrine).

[7] Interestingly, when the prosecutor warned of possible *Bruton* problems with the phrasing of a defense question, Limpert's counsel immediately rephrased his questions in a manner that expressly brought the confrontation problem to the fore. The decision was clearly tactical.

These facts demonstrate why the alleged confrontation clause violation was not manifest in this case. The statement itself was not testimonial and could only be turned into an arguable confrontation clause issue by use of an unavailable middle person in the hearsay chain. But, that evidence was part of the defense theory to paint Hamilton as an unreliable witness. Having made use of Dawson's evidence, Mr. Limpert should not now be allowed to claim constitutional error.

Regardless, any error in admitting Ms. Hamilton's statement also was harmless. "It is well established that constitutional errors, including violations of a defendant's rights under the confrontation clause, may be so insignificant as to be harmless." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *Chapman v. California*, 386 U.S. 18, 21, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *Guloy*, 104 Wn.2d at 425.

Here, the original declarant testified at trial that she made the statement, so the evidence was at most cumulative to her direct evidence. Additionally, the knife testimony went to the robbery and conspiracy charges that resulted in acquittals, while the attempted assault count was based on the unchallenged testimony that Limpert strangled Hamilton. The "pulled a knife" statement simply did not affect the verdict in the least.

9

The first argument is without merit. The claim of error was waived and, at most, amounted to no more than harmless error.

*Prosecutor's Argument*

Mr. Limpert next argues that the prosecutor committed misconduct by referencing the conviction of sports figure O.J. Simpson for robbery in Nevada. He challenged the analogy on different grounds in the trial court and fails here to establish such significant error that he is entitled to any relief.

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was both improper and resulted in prejudice in light of the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. *Id.* at 442-443. When a defendant fails to object to an improper remark, he or she waives a claim of error unless the remark is "'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Id.* at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). Thus, a properly challenged statement will be reviewed for a "substantial likelihood" that it affected the verdict, while unchallenged statements will be considered only if the error was too egregious for a timely objection to be worthwhile. This court reviews alleged improper comments in the context of the total argument, the issues in the case, the evidence addressed in the

10

argument, and the instructions given to the jury. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

The challenged comment falls in between the two noted extremes because the argument Mr. Limpert presents now is different than the one he presented to the trial court. There he argued the comment was improper because it involved the law of another state, but here he claims that referencing the divisive figure of O.J. Simpson is an appeal to passion and prejudice as well as a reference to evidence outside the record. Thus, because the objection in the trial court is not the one he makes now, this claim is best treated as if he made no objection at trial. His original objection gave the trial court no reason to consider whether mere mention of the name of O.J. Simpson was affecting his right to a fair trial or required reference to evidence outside of the record, let alone whether some curative statement to the jury would have been in order.

We need not consider whether the remark constituted error since it is quite clear that it did not likely affect the verdict. The purpose of the analogy was to open the prosecutor's remarks on the robbery charge with the reminder of a similar robbery conviction resulting from an attempt to reclaim one's personal property in a hotel room. Since the jury acquitted on the robbery and the associated conspiracy count, we are quite certain that the O.J. Simpson analogy was not prejudicial to Mr. Limpert. Accordingly, even if the remark constituted such egregious misconduct that a proper objection was

No. 33909-2-III
*State v. Limpert*

excused, Mr. Limpert would not prevail because the comment simply did not harm his case.

The misconduct claim is meritless.

*Legal Financial Obligations*

The trial court imposed $800 worth of legal financial obligations (LFOs) that the legislature has mandated be imposed at sentencing—the crime victim's compensation penalty, the filing fee, and the DNA testing fee. Mr. Limpert argues that the court should have conducted the individualized inquiry into his ability to pay before imposing any LFOs.

This argument has been rejected many times and we will not add to what has been said previously. *See generally State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016); *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

Accordingly, the judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.

12