# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 49566-0-II |
| Respondent, | |
| v. | |
| K.M. | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — K.M.[1] appeals the juvenile court's order revoking his suspended sentence under a Special Sex Offender Disposition Alternative (SSODA).[2] He argues that the juvenile court violated his due process rights by failing to delineate the evidence it relied on to revoke the SSODA and that the State violated his due process rights by failing to provide adequate notice of the alleged SSODA violations. We hold that K.M.'s due process rights were not violated. Accordingly, we affirm.

## FACTS

On October 22, 2015, K.M., pleaded guilty to first degree child molestation and he received a SSODA. As a condition of his SSODA, K.M. was required to "enter into and successfully participate and complete psychotherapy for sexual deviancy." Clerk's Papers (CP) at 20. K.M. moved from Grays Harbor to live with his grandparents in Oregon. He entered sex offender

---

[1] Per ruling of December 1, 2016, we refer to the Appellant by his initials.

[2] RCW 13.40.162.

treatment at Parrott Creek Child & Family Services in Oregon. He was supervised by an Oregon probation officer under the Interstate Compact Agreement for Juveniles.

On August 29, 2016, the State filed a motion to revoke K.M.'s SSODA. The motion alleged that K.M. "failed to follow recommendations of SSODA program" which violated the Order on Adjudication and Disposition. CP at 34. The Order on Adjudication and Disposition stated, "If the offender violates any condition of the disposition or the court finds that the respondent is failing to make satisfactory progress in treatment, the court may revoke the suspension and or execution of the disposition." CP at 14. The declaration attached to the motion specifically alleged that K.M.'s probation officer had informed the State that K.M. had failed to make adequate progress in his treatment.

Brooke Gateley Meier, K.M.'s former treatment provider, testified at the SSODA revocation hearing. Meier testified that K.M. had not been making adequate progress in treatment because he continued to refuse to take responsibility for his behavior. At the time of the hearing, Parrott Creek had terminated K.M.'s treatment. Meier believed that K.M. needed to be in a more intensive sex offender treatment program that offered 24-hour supervision. Because K.M. needed a higher level of treatment, Meier stated that she would not accept K.M. back into the program.

Kisa Foley, K.M.'s Washington probation officer, also testified. Foley testified that K.M. was not complying with the conditions of his SSODA because he had not been cooperating or making adequate progress in sex offender treatment. Foley also testified that K.M. was not currently in sex offender treatment because he had been removed from treatment. And she did not know of any treatment provider that was willing to take him into a sex offender treatment program.

After the testimony, the juvenile court stated that because Meier testified that K.M. needed a higher level of sex offender treatment and because Parrott Creek was not a Washington treatment provider, it could not order Meier to accept K.M. back into the treatment program. However, the juvenile court noted that it would prefer that K.M. complete treatment, and thus, the juvenile court continued the disposition for one week to give the parties an opportunity to explore alternative treatment options.

However, the juvenile court told the parties,

And - and if there's not treatment, then I don't have any option.

I - I'm going to revoke the SSODA and - and the State can deal with him at a JRA [Juvenile Rehabilitation Administration] facility and provide whatever treatment they're able to provide in the time that remains. But if I can send him to a residential treatment facility, that would be my preference. The young man clearly still needs sex offender treatment and he hasn't even gotten past the point of accepting responsibility for his own behavior.

Transcription of Audiotaped Proceedings (TAP) at 113. When the parties returned to court, Foley informed the juvenile court that there was no residential sex offender treatment program that was a viable option for K.M. In response, K.M.'s attorney attempted to argue that K.M. may be able to be placed at Parrott Creek's residential facility if they can negotiate a contract with Grays Harbor County. The juvenile court responded,

Well, he was already at Parrott Creek . . . and he violated the rules. He got kicked out. He's back here. He's going to JRA. Prepare - prepare the order on disposition. That's all.

TAP at 118. The juvenile court entered an order revoking K.M.'s SSODA and ordered K.M. to serve up to 36 weeks at a JRA facility. K.M. appeals.

No. 49566-0-II

ANALYSIS

Persons under a conditional suspended sentence, such as a SSODA, are entitled to minimum due process protections before the suspended sentence may be revoked. *State v. Nelson*, 103 Wn.2d 760, 762-63, 697 P.2d 579 (1985) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Minimum due process protections include (1) a written statement of the evidence relied on and the reasons for revocation and (2) notice of the claimed violations. *State v. Robinson*, 120 Wn. App. 294, 299-300, 85 P.3d 376 (2004). K.M. argues that the juvenile court failed to enter a written statement of the evidence relied on and the reasons for the revocation. K.M. also argues that the State failed to provide sufficient notice of the alleged reasons for revoking his SSODA.

I. WRITTEN STATEMENT

Although the juvenile court's written order does not include a statement of the evidence relied on, the "lack of a written statement is not fatal if the trial court indicates, on the record, what evidence it relied upon." *Robinson*, 120 Wn. App. at 300-01. When the only evidence presented at the revocation hearing was the evidence regarding the violation at issue, it is possible for us to determine what evidence the trial court relied on to support the revocation. *Robinson*, 120 Wn. App. at 301. And we may look at the record as a whole to determine the reason for the revocation. *Robinson*, 120 Wn. App. at 301. Here, like in *Robinson*, the record is sufficient for us to review the court's order revoking K.M.'s SSODA.

Because there was only a single alleged violation—the failure to make adequate progress in treatment resulting in K.M.'s termination in treatment—and all the evidence presented at the revocation hearing related to K.M.'s progress in treatment, it is possible to determine what

4

evidence the juvenile court relied on to support the revocation. And because the juvenile court specifically referenced Meier's testimony, it indicated on the record the evidence it relied on. The juvenile court's reasons for revoking K.M.'s SSODA are also clear from the record because on two separate occasions, the juvenile court stated that it was revoking K.M.'s SSODA because he had been terminated from treatment. Accordingly, the juvenile court's failure to enter a written statement of the evidence relied on is not fatal, and K.M.'s claim fails.

## II. NOTICE

K.M. also argues that the State failed to provide adequate notice of the alleged SSODA violation and that the revocation was based on reasons unrelated to the notice he received. K.M. argues that the notice was too vague as it did not allege any specific violation or facts, that the State did not present evidence of any recommendation that he had failed to follow, and that the State only alleged that his progress was inadequate and he needed a higher level of sex offender treatment. The State argues that K.M. waived his challenge to notice by failing to object below. We agree that K.M. has waived his challenge to notice.

Under RAP 2.5(a), an appellate court may decline to address an error not raised in the trial court. Washington courts have not allowed a defendant to "sit by while his due process rights were violated at a hearing and then allege due process violations on appeal." *Robinson*, 120 Wn. App. at 299. A defendant waives a challenge to notice requirements by failing to object to notice at the revocation hearing. *Robinson*, 120 Wn. App. at 299-300. Here, K.M. did not object on the

basis of notice at the revocation hearing. Because he failed to object below, we do not consider the issue on appeal under RAP 2.5(a).[3] *Robinson*, 120 Wn. App. at 300.

K.M. also argues that we should overrule *Robinson*'s holding that challenges to notice requirements may be waived if the defendant does not object at the hearing to inadequate notice of the alleged violations. We require "'a clear showing that an established rule is incorrect and harmful before it is abandoned.'" *State v. Johnson*, 188 Wn.2d 742, 756-57, 399 P.3d 507 (2017) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). K.M. argues that (1) *Robinson* improperly relied on *State v. Nelson*, (2) by analogy, a defendant may challenge defects in the charging documents for the first time on appeal, and thus, he should be able to challenge the notice he received of the alleged SSODA violation, and (3) applying waiver would leave "offenders with no remedy for violations of the constitutional right to adequate notice." Br. of Appellant at 11. We reject these arguments.

---

[3] However, K.M.'s claim would also fail on its merits. K.M.'s entire argument is based on a statement in the motion to revoke the SSODA that K.M. failed to comply with the requirements of the SSODA. However, page two of the declaration attached to the motion for revocation states, "The probation counselor informed the State that the respondent has failed to make adequate progress in his treatment." CP at 35. Because the State included a specific allegation in the declaration attached to the motion for the SSODA revocation, the State clearly provided K.M. with adequate notice of the reasons for the SSODA revocation.

Further, we are concerned with the lack of candor in appellate counsel's briefing. It is apparent that a specific allegation supporting the revocation was included with the notice and counsel failed to acknowledge this allegation. Moreover, the record demonstrates that there were four prior hearings at which the specific allegations supporting the motion to revoke K.M.'s SSODA were addressed. Appellate counsel's disregard of the record is disconcerting and not well-taken.

First, K.M. recharacterizes the holding in *Nelson* as invited error rather than waiver, and then asserts that *Robinson* erred by relying on *Nelsen*. However, the *Nelson* court plainly stated that failure to object "constituted a waiver of any right of confrontation and cross examination." *Nelson*, 103 Wn.2d at 766. Accordingly, the *Robinson* court reasonably relied on *Nelson*'s statement to mean that due process rights may be waived at revocation hearings.

Second, K.M argues, by analogy, that notice in a SSODA revocation may be challenged for the first time on appeal because a defendant may challenge defects in criminal charging documents for the first time on appeal. But this analogy fails. The adequacy of a criminal charging document is governed by specific constitutional provisions and criminal court rules, and under those rules issues regarding the adequacy of the charging document may be raised for the first time on appeal. *See, e.g.*, *State v. Kjorsvik*, 117 Wn.2d 93, 102-03, 812 P.2d 86 (1991); CrR 2.1. In contrast, revocation hearings are subject to minimum procedural due process protections and do not require the same kind of procedural safeguards as a criminal trial. *Morrissey*, 408 U.S. at 481-85. Because revocation hearings are subject to minimum procedural due process requirements and not the rules governing criminal charging documents, K.M.'s argument fails.

Third, K.M.'s assertion that by applying waiver to notice offenders would be deprived of a remedy is disingenuous. The only requirement to avoid waiving a claimed error of notice is an objection at the hearing. If counsel objects and the error is not remedied, then the error may be addressed on appeal. If the alleged error "renders the offender completely unable to prepare a defense" as K.M. asserts, it is reasonable to believe that the offender would be able to object to the violation and create a record. Br. of Appellant at 11. Accordingly, there does not seem to be any

No. 49566-0-II

harm from requiring offenders to object to alleged notice deficiencies at the hearing.  Thus, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.