

**FILED**
**APRIL 4, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | |
| | ) | No.  35979-4-III |
| M.S.D., | ) | (Consolidated with |
| _____ | ) | No. 35980-8-III; |
| | ) | No. 35981-6-III; |
| In the Matter of the Parental Rights to | ) | No. 35982-4-III) |
| | ) | |
| H.G.D., | ) | |
| _____ | ) | UNPUBLISHED OPINION |
| | ) | |
| In the Matter of the Parental Rights to | ) | |
| | ) | |
| S.F.D., | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Parental Rights to | ) | |
| | ) | |
| N.L.M., | ) | |
| _____ | ) | |

KORSMO, J. — A father appeals orders terminating his parental relationship with his four minor children, arguing that not all necessary services were provided to him and that he received ineffective assistance of counsel.  We affirm.

FACTS

John D. (J.D.) is the natural father of minor children M.S.D., H.G.D., S.F.D., and N.L.M.  The Department of Social and Health Services (DSHS) filed dependency

petitions for all four children; in October 2015, the court found the children to be dependent. The court identified J.D.'s parental deficiencies as lack of parenting skills, an inability to provide a safe and stable home, and having mental health, anger, and substance abuse issues. The court also ordered J.D. to participate in 1) a drug/alcohol treatment program, 2) random urinalysis (UA), 3) a parenting assessment, 4) an anger management assessment, and 5) mental health counseling. The court required supervised visitation between J.D. and the children. Both parents were required to maintain regular contact with DSHS and provide contact information.

In February 2017, DSHS filed termination petitions for all four children. The petitions proceeded to a bench trial. For various reasons, J.D. only attended one afternoon of the trial. Neither he nor the children testified. S.F.D. and N.L.M. were represented by counsel at the trial.

Four social workers were assigned to the case during the dependency. Nora Guerra was the DSHS social worker assigned to the children's cases from July 2015 to June 2016. Guerra testified that she referred J.D. to providers of drug and alcohol assessment, random UAs, parenting assessment, anger management, and mental health counseling, but that J.D. did not participate in any of those services. While Guerra was involved in the cases, J.D. was homeless but was working with an agency to find housing. He eventually did obtain an apartment with her assistance, but was later

evicted. She testified that while she was assigned to the cases, J.D. had not made significant progress in correcting his deficiencies as a parent.

The other DSHS social workers assigned to the children's cases were Arnell Garza (August 2016 to February 2017), Rachel Beckstrom (February to July 2017), and Ashlee Nelson (July to October 2017). Similar to Guerra, each would testify that he or she reminded J.D. about the need to participate in services, offered J.D. each service, and that J.D. made little or no attempt to participate. J.D. would not provide his address to any of them. He also regularly failed to attend meetings with them and often missed scheduled visits with the children.[1] Each would opine at trial that termination was in the best interests of the children because it was not likely J.D. would correct his parental deficiencies.

When asked what effect the irregularity of visitation had on the children, Beckstrom responded that N.L.M. and S.F.D. told her that they did not want to attend visits because they felt their parents did not care about them. She further testified that the children were doing well in foster care, and that "[t]hey explained that they felt safe and comfortable." When asked whether the children spoke to her about their long-term living arrangements, Beckstrom responded that the children told her they wanted to be adopted.

---

[1] Nelson calculated that between February and July 2017, J.D. missed 20 of 29 scheduled visits with the children. Elizabeth Monk, a visitation supervisor, testified that between August and December 2017, J.D. attended only 3 of 12 available visits with the children.

Beckstrom related that a few times during visitation, J.D. "got very upset with the kids and would yell, used inappropriate language, lie, would talk about the case information." When asked how this behavior affected the children, Beckstrom responded that they were stressed and N.L.M. and S.F.D. begged not to go to visits. In describing the nature of visitation, Beckstrom testified that N.L.M. told her she did not want to attend visits because her parents were lying that they were trying to get her back. J.D.'s counsel did not object to Beckstrom's testimony.

Counsel for S.F.D. and N.L.M. asked Nelson what N.L.M. told her about visitation. Nelson responded that N.L.M. told her that she would have preferred not to attend visits. J.D.'s counsel did not object to Nelson's testimony.

Nancy Lysher was the guardian ad litem (GAL) assigned to S.F.D., H.G.D., and M.S.D. from July 2015 through the bench trial. She met with J.D. more than 10 times. J.D. never asked her for help in accessing services, nor did he inquire into the well-being of his children. Other than the apartment he had briefly, J.D. did not provide Lysher with a home address. Lysher also testified that J.D. did not consistently attend scheduled visits with the children. In explaining the effect of the inconsistency, she said, "I think one of them said to me at one time, 'I really just go for the junk food and the playing.'"

When asked if the children had commented on the idea of adoption, Lysher responded, "They want to be adopted. They've talked about it and have talked about what their name change will be and—and what life would be like."

4

No. 35979-4-III; No. 35980-8-III; No. 35981-6-III; No. 35982-4-III
*Parental Rights to M.S.D., H.G.D., S.F.D., & N.L.M.*

On March 23, 2018, the court terminated the parent-child relationship between J.D. and the children. The court again identified inability to provide a safe and stable home as one of J.D.'s parental deficiencies. The court found that the necessary services had been adequately offered and that termination was in the best interests of the children.

J.D. timely appealed to this court. A panel considered the matter without oral argument.

ANALYSIS

J.D. contends that the State failed to offer all necessary services, and that he received ineffective assistance of counsel. We address the two contentions in the order stated.

*Necessary Services*

J.D. argues that the State did not offer him all necessary services because it did not offer housing services. We agree with the trial court that all necessary services were offered.

In order to terminate a parent-child relationship, the State must prove the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-577, 257 P.3d 522 (2011). The only element at issue in this appeal is:

> That the services ordered under RCW 13.34.136 have been expressly and
> understandably offered or provided and all necessary services, reasonably
> available, capable of correcting the parental deficiencies within the

5

> foreseeable future have been expressly and understandably offered or provided.

RCW 13.34.180(1)(d). "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" *In re K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (quoting *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). "The court's factual findings must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence." *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *World Wide Video Inc. v. Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991).

J.D. challenges only DSHS's failure to provide housing services. However, while the trial court identified inability to provide stable housing as a parental deficiency, it did not order J.D. to participate in housing services. Similarly, J.D. never contended at the termination trial that housing services were necessary and made no attempt to establish or argue that position to the trial court. Therefore, housing services were not necessary services under RCW 13.34.180(1)(d), and the State was not obligated to offer them.

Moreover, Ms. Guerra did assist J.D. in obtaining public housing, although he was evicted soon thereafter. There was little more that DSHS could have done for him.

Accordingly, clear, cogent, and convincing evidence supports the court's determination that DSHS offered all necessary services.

*Assistance of Counsel*

J.D. next argues that his counsel provided ineffective assistance by failing to object to hearsay testimony from the social workers and GAL. He fails to establish that his counsel was ineffective.

"At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel." RCW 13.34.090(2). "[T]he right to counsel attaches to indigent parents in termination proceedings by way of RCW 13.34.090(2)." *In re Welfare of J.M.*, 130 Wn. App. 912, 921, 125 P.3d 245 (2005). "This right derives from the due process guaranties of article I, section 3 of the Washington Constitution as well as the Fourteenth Amendment." *Id*. "[I]n every case in which the right to counsel attaches—legal representation means effective representation." *Id*. at 922. "A claim of ineffective assistance of counsel presents a mixed question of fact and law reviewed de novo." *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

In order for a court to terminate a parent-child relationship, the State must prove by a preponderance of the evidence that termination is in the best interests of the child. *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 479, 379 P.3d 75 (2016); RCW 13.34.190(1)(b).

7

Hearsay is inadmissible unless a rule or statute provides otherwise. ER 801. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). The children's statements relayed by the social workers at trial were made out of court, and at least some of them were offered to prove the matters asserted in the statements. However, even if counsel erred by not objecting to the hearsay testimony, the deficiency did not prejudice J.D.

Washington courts have applied two different standards to ineffective assistance claims in dependency cases. *See J.M.*, 130 Wn. App. at 921-922. Under a Sixth Amendment standard, a defendant must show that counsel's performance was deficient, and that counsel's errors deprived defendant of a *fair* trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the due process standard articulated by this division, assistance is ineffective if counsel's errors prevent a *meaningful* hearing. *In re Moseley*, 34 Wn. App. 179, 184, 660 P.2d 315 (1983). We decline to decide which standard applies because J.D. has not shown that he received ineffective assistance under either standard.

"To establish prejudice [under *Strickland*], a defendant must show that but for counsel's performance, the result would have been different." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Even if the court had excluded the alleged hearsay statements here, the result of the trial would have been the same. Other evidence overwhelmingly supported the

8

court's conclusion that termination was in the best interests of the children. The social workers assigned to the cases observed J.D. make no progress in correcting his identified parental deficiencies; J.D.'s participation in court ordered services was limited to attending one parenting or domestic violence class, J.D. never inquired as to the well-being of his children, J.D. regularly missed scheduled visits with his children, J.D. committed crimes and was incarcerated before and during dependency, and J.D. was absent for the majority of the termination trial. No evidence indicated that J.D. was willing or able to remedy his parental deficiencies. On the other hand, the testimony indicated that the children were thriving in the care of their foster parents, and that their welfare would be best served by adoption into a permanent home. Even without the hearsay testimony, a preponderance of the evidence shows that termination was in the children's best interests.

A meaningful hearing under *Moseley* "means, at a minimum, the opportunity to argue the strengths of one's own position and to attack the State's position." *J.M.*, 130 Wn. App. at 925. "Defendant's failure to object to a violation of due process and his own use of hearsay during argument constitute[s] a waiver of any right of confrontation and cross examination." *State v. Nelson*, 103 Wn.2d 760, 766, 697 P.2d 579 (1985). "The probationer may not sit by, without objection (and in fact use similar hearsay evidence), and then on appeal for the first time claim lack of due process." *Id*.

9

J.D. had a meaningful hearing because his counsel confronted DSHS's witnesses and argued that the required services were not understandably offered and that termination was not in the children's best interests. He waived any argument that he was denied his due process right to cross-examine witnesses because he did not raise this issue to the court.

J.D. has not established, under either standard, that his counsel provided ineffective assistance.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, J.

10